**WEISBERG LAW**
Matthew B. Weisberg, Esq.
Attorney ID No. 85570
7 South Morton Ave. 19070
Morton, PA
610-690-0801
Fax: 610-690-0880
**Attorney for Plaintiff**

**SCHAFKOPF LAW, LLC**
Gary Schafkopf, Esq.
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334
**Attorney for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LOUIS ROSENTHAL**<br>830 S. Hoffert Street<br>Fountain Hill, PA 18015 | No. |
| Plaintiff,<br>v. | **JURY TRIAL OF TWELVE (12) DEMANDED** |
| **COMMONWEALTH OF PENNSYLVANIA**<br>**d/b/a PENNSYLVANIA STATE POLICE**<br>1800 Elmerton Ave.<br>Harrisburg, PA 17110 | |
| And | |
| **STEPHEN YANCHIS**<br>**Individually, and in his official capacity as a Sergeant for the Pennsylvania State Police**<br>1800 Elmerton Ave.<br>Harrisburg, PA 17110 | |
| And | |
| **BOB GLAD**<br>**Individually, and in his official capacity as a Corporal for the Pennsylvania State Police**<br>1800 Elmerton Ave.<br>Harrisburg, PA 17110 | |
| And | |

| | |
|---|---|
| **JEFFREY RAMOS** | : |
| **Individually, and in his official capacity as a** | : |
| **Corporal for the Pennsylvania State Police** | : |
| 1800 Elmerton Ave. | : |
| Harrisburg, PA 17110 | : |
| | : |
| And | : |
| | : |
| **KYLE TETER** | : |
| **Individually, and in his official capacity as a** | : |
| **Lieutenant for the Pennsylvania State Police** | : |
| **Department** | : |
| 1800 Elmerton Ave. | : |
| Harrisburg, PA 17110 | : |
| | : |
| And | : |
| | : |
| **THOMAS TRAN** | : |
| **Individually, and in his official capacity as a** | : |
| **Lieutenant for the Pennsylvania State Police** | : |
| **Department** | : |
| 1800 Elmerton Ave. | : |
| Harrisburg, PA 17110 | : |
| | : |
| And | : |
| | : |
| **JOHN DOES 1-10** | |
| **Defendants.** | |

## CIVIL ACTION COMPLAINT

### INTRODUCTION

Plaintiff, Louis Rosenthal, by his undersigned attorneys, brings this action against his employer, the Pennsylvania State Police ("PSP") and its agents, servants and employees, for religious and ethnic discrimination, hostile work environment and retaliation by the Defendants.

## **PARTIES**

1. Plaintiff, Louis Rosenthal, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at the above captioned address.

2. At all times relevant hereto, Plaintiff was employed by the Defendant, the Commonwealth of Pennsylvania, in his capacity as a State Trooper, working for the Pennsylvania State Police.

3. Plaintiff is an eighteen-year career law enforcement officer, and previously served with the New York Police Department.

4. Defendant, Commonwealth of Pennsylvania, doing business as the PSP, is a state government agency, duly organized and existing, doing business at the above captioned address.

5. Defendant, Stephen Yanchis, is an adult individual who, at all times material herein, acted individually, as well as in his individual capacity as an agent, servant, workman, or employee of the PSP acting under color of State law as Lieutenant for the Pennsylvania State Police.

6. Defendant, Bob Glad, is an adult individual who, at all times material herein, acted individually, as well as in her individual capacity as an agent, servant, workman, or employee of the PSP acting under color of State law as a Corporal for the Pennsylvania State Police.

7. Defendant, Kyle Teter, is an adult individual who, at all times material herein, acted individually, as well as in his individual capacity as an agent, servant, workman, or employee of the PSP, acting under color of State law as a Lieutenant of Pennsylvania State Police.

8. Defendant, Thomas Tran, is an adult individual who, at all times material herein, acted individually, as well as in his individual capacity as an agent, servant, workman, or employee of, the PSP acting under color of State law as a Lieutenant for the PSP.

9. Defendant Corporal Jeffrey Ramos, is an adult individual who, at all times material herein, acted individually, as well as in his individual capacity as an agent, servant, workman, or employee of, the Pennsylvania State Police Department acting under color of State law as a Lieutenant of the PSP.

10. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below.

## JURISDICTION AND VENUE

11. The District Court has jurisdiction over this Complaint pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331 and 28 U.S.C. §1333, among other laws.

12. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

13. All conditions precedent, including the EEOC Right to Sue, have been satisfied.

## FACTUAL ALLEGATIONS

14. Plaintiff, Pennsylvania State Trooper Louis Rosenthal, is a Jewish male individual working for the Pennsylvania State Police Bureau of Gaming Enforcement.

15. Beginning in or around March 2017, Plaintiff began to experience a campaign of discrimination and retaliation at the hands of his Commanding Officer, Defendant

Sergeant Stephen Yanchis.

16. This misconduct took place in front of Plaintiff's colleagues, including but not limited to Adam Jacobini and Corporal Bob Glad.

17. Defendant Yanchis' discriminatory conduct included the following:

    a. Telling Plaintiff that he would have to go "dumpster diving" if he did not remove his personal items from the office.

    b. Using offensive words in the workplace including calling pet dogs belonging to police officers "faggot dogs."

    c. Berating Plaintiff in front of co-workers for shaving in the office bathroom by cursing at Plaintiff, following Plaintiff into the bathroom, asking him if he was a "fucking pig," whether his "fucking mother works here," and calling Plaintiff "disgusting."

    d. Threatening to deny Plaintiff's future vacation requests in response to Plaintiff requesting leave to care for his ill mother.

    e. Burdening and punishing Plaintiff by changing his shift to the midnight shift.

    f. Purposefully assigning Plaintiff undesirable and complex assignments that were not his turn to complete.

18. On or about April 4, 2017, Plaintiff overhead Defendant Yanchis and Defendant Glad talking about Plaintiff's handling of an ongoing case, and as soon as Plaintiff was seen by the two defendants, they started whispering and laughing.

19. On or before April 4, 2017, Plaintiff heard Defendant Yanchis refer to a local Chinese Restaurant called Chopsticks as "that fucking Asian Restaurant".

20. Defendant Yanchis openly discussed his suspicion that the Chinese restaurants in the

area were engaging in a money laundering scheme at the Sands casino.

21. Plaintiff however was not aware of any confirmed money laundering cases after six years at Sands Casino as a member of the Bureau of Gaming Enforcement

22. Plaintiff believes and therefore avers that these comments about Chinese establishments reflect said Defendant's discriminatory tendencies as to ethnic groups not his own.

23. Plaintiff applied for a position in the PSP Computer Crime Unit.

24. The position required specialized computer training and the taking of an exam.

25. Plaintiff me the computer training requirements and waited for Defendant Glad to advise him when the

26. Plaintiff discovered Defendant Glad failed to inform him of the testing dates and nearly missed the exam.

27. Upon information and belief, Defendant Glad intentionally failed to advise Plaintiff about the scheduled test.

28. Plaintiff took the exam and passed but was unable to obtain his exam scores.

29. Plaintiff was advised that his supervisors had the score.

30. Defendant's refused to provide Plaintiff with his test score.

31. Plaintiff was denied the position despite meeting all the necessary qualifications including passing the necessary exam.

32. Plaintiff believes and therefore avers that his supervisors took actions to stop him from obtaining the position.

33. Plaintiff has spoken with other PSP Troopers who have worked with Defendant Yanchis about his use of discriminatory language while working.

34. Fellow Trooper, Kirk Vanim, worked under Defendant Yanchis for about 32 months.

35. Vanim relayed that Defendant Yanchis once reprimanded him by using the word "nigger" and calling him "lazy." Vanim also told Plaintiff that Defendant Yanchis remarked that "being black should warrant a beating by police."

36. Trooper Frank Dematto, worked under Defendant Yanchis, Dematto stated that he too was subject to more than a year of disparaging abuse at the hands of the Defendant.

37. Defendant Glad has also made racial and anti-Semitic slurs in the office, including but not limited to:

    a. Telling Trooper Michael Gasperetti, who was planning to purchase a retirement home in Arizona, that "96% white population" was "good, and stating, in front of Plaintiff, despite Plaintiff's Jewish ethnicity, that "You couldn't get better than that if you were in Germany in the 1930s."

    b. Commenting that he would not be shopping on black Friday because he did not want to be with all those "niggers and spics."

    c. Stating that, in reference to part time security work for a jeweler in Philadelphia: "for that amount of money, I would guard the little Jew guy."

38. Plaintiff reported to his concerns regarding Defendant Yanchis' racial and disparaging remarks Pennsylvania State Trooper Association Representative Toma Durilla.

39. Representative Durilla relayed to Plaintiff that his complaints were not new information and that he even knew before they spoke why Plaintiff was calling.

40. No action was taken against Defendant Yanchis following Plaintiff's complaints.

41. On or about May 2, 2017, Plaintiff spoke to Corporal Ramos about Defendant Yanchis for the second time. Three other colleagues were present and all confirmed to the Corporal that morale has sunk since the beginning of Defendant Yanchis's tenure due to his disparaging comments and abusive behavior.

42. On or about May 10, while Plaintiff was getting changed, Defendant Yanchis approached him in the locker room and berated him that he cannot be "Jewing the state" for overtime. Plaintiff felt attacked, offended and disparaged.

43. Plaintiff complained to Corporal Ramos, again, concerning the discriminatory and retaliatory conduct.  Corporal Ramos did not take any action to address the continuous Plaintiff's complaints.

44. Plaintiff reported the continuous hostile work environment to Defendant Corporal Glad.

45. Plaintiff met with Defendant Lieutenant Teter to further report the hostile work environment at the hands of Defendant Yanchis.

46. Defendant Teter held the interview in Defendant Yanchis's office. Defendant Teter was dismissive of Plaintiff's complaints.

47. No action was taken by Defendant Teter to address Plaintiff's complaints.

48. Plaintiff again spoke to the Pennsylvania State Trooper Representative Toma Durilla.and reported the continuing disparaging comments and the increasingly hostile work environment.

49. On or about June 8th, an official EEO meeting with Defendant Teter was scheduled, with Chris Yaworski present.

50. Defendant Teter expressed the desire to settle matters in-house and stated that certain

comments and incidents were stale and will not be investigated and that Defendant Yanchis will not be disciplined officially.

51. Defendant Teter intentionally refused to interview Troopers Kirk Vanim, Frank DeMatto, Troopers Grossi, Rodriguez and Shutkufski all of whom have personal knowledge of Defendant Yanchis's bigoted and racist comments and views.

52. Since initially reporting the incidents, Plaintiff received a poor ERP performance review from his Defendant Glad

53. . Plaintiff avers that these negative ratings constituted retaliation for reporting Defendants Yanchis and Glad

54. Prior to Plaintiff Reporting Defendant Yanchis's alleged misconduct, Plaintiff and Defendant Jeffrey Ramos enjoyed a good working relationship.

55. Since the reporting, Defendant Ramos has regularly chided and criticized Plaintiff's work even though Plaintiff's performance has not changed.

56.  Plaintiff further believes and therefore avers that Defendants Ramos, Yanchis and Glad intentionally excluded him from meetings and shunned him, in retaliation for his complaints.

57. Plaintiff believes and therefore avers, additionally, as part of the retaliation, that Plaintiff was intentionally transferred from Sands Casino to the Valley Forge Casino which is an hour and twenty-minute drive from his house.

58. Upon information and belief, Plaintiff's EEO complaint was not kept confidential and was intentionally disseminated at Plaintiff's new place of employment at the Valley Forge Casino.

59.  Defendant Teter revealed to Plaintiff's new colleagues that Plaintiff instituted the

EEO complaint which is the reason why he transferred out of Sands Casino.

60. Plaintiff encountered negative attitudes and disparaging treatment from his new colleagues after they found out about the EEO complaint.

61. Plaintiff has been denied transfers to the computer crime unit for specialized positions despite being the most qualified candidate.

62. Plaintiff believes and avers he has been intentionally discriminated against by Defendants on the basis of his race.

63. As a direct and proximate result of the retaliatory conduct of Defendants', Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

64. Defendants' acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights.

## COUNT I - TITLE VII VIOLATION

65. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

66. By committing the foregoing acts of discrimination, hostile work environment and retaliation against Plaintiff, Defendant has violated Title VII.

67. Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

68. Plaintiff has been denied promotions which he is qualified for reporting Defendants' discriminatory behavior.

69. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

70. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, hostile work environment and retaliatory acts unless and until this Court grants the relief requested herein.

71. No previous application has been made for the relief requested herein.

## COUNT II – 1983 VIOLATION

72. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

73. Defendants' retaliatory conduct, as set forth herein, deprived Plaintiff of equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

74. Defendants' conduct, as alleged herein, violated Plaintiff's rights to substantive and procedural due process.

75. Defendants' actions violated Plaintiff's rights under the United States Constitution, including but not limited to the First, Fifth, and Fourteenth Amendments thereof.

76. As a direct and proximate result of Defendants' acts and conduct which caused and continue to cause Plaintiff to be denied equal protection under the law, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees and costs.

77. The wrongful acts and conduct of Defendants' were done with deliberate indifference

to the statutory and constitutional rights of Plaintiff.

78. In addition, and/or in the alternative, the actions of Defendants and their agents and employees were knowingly acquiesced to, and thereby had the force or official or unofficial policy, practice or custom of the governmental agency.

79. In addition, the actions of Defendants also violated Plaintiff's rights pursuant to 42 U.S.C. Sec. 1981, in that said actions constituted discrimination against Plaintiff with respect to his Jewish ethnicity and retaliation for having complained.  Violation of same is actionable against governmental actors pursuant to Section 1983.

## COUNT III- PHRA VIOLATION

80. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

81. Defendants', by the above improper and retaliatory acts, have violated the PHRA.

82. Said violations were intentional and willful.

83. As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

84. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' retaliatory acts unless and until the Court grants the relief requested herein.

85. No previous application has been made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a) declaring the acts and practices complained of herein to be in violation of Title VII

b) declaring the acts and practices complained of herein to be in violation of Section 1983;

c) declaring the acts and practices complained of herein to be in violation of the PHRA;

d) entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined; awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct; awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct; awarding punitive damages to Plaintiff;

e) awarding Plaintiff such other damages as are appropriate under Title VII, Section 1983, the PHRA;

f) awarding Plaintiff, the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and, granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully Submitted,

| **WEISBERG LAW** | **SCHAFKOPF LAW, LLC** |
|---|---|
| BY: */s/ Matthew Weisberg* <br> MATTHEW B. WEISBERG, ESQ | BY: */s/ Gary Schafkopf* <br> GARY SCHAFKOPF, ESQ. |
| DATED: 12-28-17 | DATED: 12-28-17 |